2 Ill. App.3d 684 (1971)
276 N.E.2d 745
EDMOND GEORGE BRIDEWELL, for the use and benefit of Horace Mann Insurance Company, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF SHAWNEE COMMUNITY UNIT SCHOOL DISTRICT No. 84, Defendant-Appellee.
No. 70-75.
Illinois Appellate Court  Fifth District.
December 3, 1971.
*685 J.C. Mitchell and W.A. Armstrong, of Marion, for appellant.
Feirich, Feirich & Green, of Carbondale, (Bill F. Green, of counsel,) for appellee.
Reversed and remanded.
Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:
Plaintiff Edmund G. Bridewell brought this action against his employer, the school district, for the use and benefit of Horace Mann Insurance Company to recover attorneys' fees and costs which were expended on behalf of the plaintiff by the said insurance company pursuant to a liability policy extending indemnity liability insurance coverage for legal liability imposed upon him in his capacity as a school teacher.
This cause is the second case to be brought to an appellate court by the respective insurance companies involved. The original litigation concerned *686 the wrongful death action of a student of the present plaintiff while the present plaintiff was employed by the present defendant, The Board of Education of Shawnee Community Unit School District No. 84 of Union, Jackson and Alexander Counties, Illinois (School District).
In the original action one Treece filed suit naming the School District as Defendant in a wrongful death action. The present plaintiff (Bridewell) was added as a defendant and the School Board then attempted to file a third party complaint against Bridewell. Bridewell, with counsel retained by the Horace Mann Insurance Company (Mann), successfully defeated the motion for leave to add a third party defendant at the trial court. The decision was affirmed by the Illinois Supreme Court in Treece v. Shawnee Community Unit School District, et al., 39 Ill.2d 136, 233 N.E.2d 549.
At all times herein pertinent, Bridewell was employed by the School District and was covered by an insurance policy issued by Mann which contained among other provisions the following:
INSURING AGREEMENT
I. COVERAGE  LIABILITY
To pay on behalf of each and every insured member of the association (hereinafter called the insured) all sums which he shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, and as damages because of injury to or destruction of property, including the loss of use thereof, arising out of an occurrence in the course of his duties as an instruction, member of a faculty or teaching staff.
II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS
As respect such insurance as is afforded by the other terms of this policy the company shall:
(a) Defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;
CONDITIONS
....................................................
6. Other insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy or a greater portion of such loss than the applicable limit of liability stated in the declaration bears to the *687 total applicable limit of such liability of all valid and collectible insurance against such loss.
7. Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured's right of recovery therefore any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.
Bridewell was also a covered employee under a policy issued by the St. Paul Insurance Company (St. Paul) to the School District:
INSURING AGREEMENTS
I. COVERAGE A  BODILY INJURY LIABILITY
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death, at any time resulting therefrom sustained by any person. * * *
II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENT
With respect to such insurance as is afforded by this policy, the company shall:
(a) Defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;
CONDITIONS
....................................................
11. Other insurance. If the insured's liability insured under this policy is covered by any other valid and collectible insurance, then this policy shall act as excess insurance over and above such other insurance.
12. Subrogation. In the event of any payment under this policy the company shall be subrogated to all the insured's rights of recovery therefore and the insured shall execute all papers required and shall do everything that may be necessary to secure such rights.
There was in effect included as additional duties of a board of education, Ill. Rev. Stat., ch. 122, par. 10-21.6 (since repealed):
"To indemnify and protect school districts, members of boards of education, the employees and student teachers against death and bodily injury and property damage claims and suits, including defense *688 thereof, when damages are sought for negligent or wrongful acts alleged to have been committed in the scope of employment or under the direction of the board of education. No agent may be afforded indemnification or protection unless he is a member of a board of education, an employee or a board of education, or a student teacher."
The School District in attempting to file the above third party complaint contended that Bridewell was primarily liable and the School District secondarily liable. This contention was not adopted in Treece v. Shawne, supra. The statute requiring indemnification was held to be constitutional and "unmistakably was eliminating any right a school district might have to recover back from a negligent employee". After the Illinois Supreme Court's decision, St. Paul, through its attorney, entered an appearance for Bridewell and the case settled with the complaints being dismissed.
The law firm that represented St. Paul from the time of the filing of the suit by Treece, until the decision of the Illinois Supreme Court, had refused to defend Bridewell. Attorneys retained by Mann pursuant to its insurance policy with Bridewell provided Bridewell with defense until such time as the attorneys retained by St. Paul entered their appearance on behalf of Bridewell.
The present suit was commenced on November 19, 1968, by the filing of a complaint wherein Bridewell (for the use and benefit of Mann) prayed for damages in the amount of $4,174.13 and costs. The School District answered and in an affirmative defense asked that Mann be named the real party in interest and not entitled therefore to collect the fees and expenses.
The plaintiff filed a Motion to Strike the defendant's Affirmative Defense. This motion was denied. The defendant then made Request for Admission of Fact to which the plaintiff filed no objection. Thereafter the defendant's Motion for Summary Judgment was granted.
The question before this court on the plaintiff's appeal is whether an insurance company (Mann) who insured the liability of a public school teacher may seek indemnity from the insurer (St. Paul) of a public school district under Ill. Rev. Stat., ch. 122, par. 10-21.6 for the cost of attorney fees and expenses paid by Mann in defending a "Motion for Leave to File a Third Party Complaint" filed by the public school district's company, St. Paul, against the public school teacher's insurance company, Mann.
Several further factors must be noted in considering this cause. Bridewell never was personally obligated to pay and has not paid any of the attorney fees in dispute. Mann's policy had a $50,000 limit and St. Paul's policy had a limit of $25,000. The claim by Treece was settled for an *689 amount of $7,500 of which Mann made no contribution, St. Paul having paid the entire amount.
 1, 2 There is no dispute of any of the material facts of this cause. The only question to be decided is one of law and thus the cause is appropriate for summary judgment. (Phelps v. Elgin Academy, 125 Ill. App.2d 364, 260 N.E.2d 864; Cohen v. Northwestern Nat. Life Ins. Co., 124 Ill. App.2d 15, 259 N.E.2d 864.) However, for the summary judgment to be allowed the moving party must, in fact, be entitled to a judgment or decree as a matter of law. Ill. Rev. Stat., ch. 110, par. 57(3), Stein v. Baum, 89 Ill. App.2d 142, 232 N.E.2d 96.
The appellee has presented three separate contentions to support the judgment of the trial court. These shall be considered in the order presented.
 3, 4 First, the appellee urges that the indemnification statute, Ill. Rev. Stat., ch. 122, par. 10-21.6, set forth above was in derogation of the common law and must be strictly construed in favor of the teacher's exclusive benefit. We agree that the statute must be strictly construed as it was in derogation of the Common Law. (Anderson v. Board of Education of School Dist. 91, 390 Ill. 412, 61 N.E.2d 562; Summers v. Summers, 40 Ill.2d 338, 239 N.E.2d 795.) However, words and phrases of the statutes are to be construed according to common and approved usage. (Farrand Coal Co. v. Halpin, 10 Ill.2d 507, 140 N.E.2d 698.) To support the contention that the right to indemnification is a personal right of Bridewell the appellant cites the New York case of Sun Indemnity Co. v. Board of Education of the City of New York, 264 App.Div. 73, 34 N.Y.S.2d 475. This 1942 case construed a New York statute very similar to the one in question. The New York statute provided that the Board of Education was to be liable for, and to assume liability to the extent that it was to hold harmless any teacher for damages arising out of the teacher's negligence while the teacher was within the scope of his employment. Sun Indemnity filed suit against the Board of Education for indemnification of a judgment that it paid for an insured school teacher. The New York court held that the statute was intended only to benefit the teacher and thus could not be extended by implication, assignment or subrogation. The court stated "It was passed for the exclusive benefit of teachers".
 5 The Sun case cites as its authority for refusal to extend the rights of subrogation the case of Royal Indemnity Co. v. Travelers Insurance Co., 244 App.Div. 582, aff'd. 270 N.Y. 574. The Royal case involved a suit by an insurance company of an employer attempting to recover by way of subrogation against a third party tort feasor for the amount of its workmen's compensation payments made to the employer's injured employee. The New York Court denied the company the relief it sought. *690 This is not the law of this jurisdiction. In Illinois the employer does have a common law right of subrogation over against a third party tort feasor for workmen's compensation paid to the employee. Geneva Const. Co. v. Martin Transfer & Storage, 4 Ill.2d 273, 122 N.E.2d 540.
 6 We are unable to find, nor have the parties found, any Illinois cases that directly deal with the question here presented. We have been supplied with several citations to aid our deliberation. However, we find none of the cases so cited to be determinative of the issues. We are, however, persuaded by the language of General Accident Fire & Life Assurance Corp. v. Smith and Oby Co., 272 F.2d 581 (6th Cir.), 77 A.L.R.2d 1134, which involved an indemnification agreement between Ferguson, a general contractor, and Smith and Oby Co., a subcontractor. The subcontractor agreed to indemnify the general contractor against all loss, liabilities, suits or obligations of every kind, paid or incurred by the general contractor on account of the failure of the subcontractor to perform as agreed. There were some further indemnifications also made by the subcontractor to the effect that the subcontractor would indemnify for any injury sustained by any employee or others performing work for subcontractor arising "from any cause or any reason whatsoever in or about the premises where the work is being performed". An employee of the subcontractor was injured while working on the project through the sole negligence of an employee of the general contractor. The injured employee sued the general contractor who asked the subcontractor to defend. The subcontractor refused to defend; whereupon the General Accident Co. proceeded under the terms of its policy with the general contractor to defendant and ultimately settle the claim. The General Accident Co. then filed suit against the subcontractor under the terms of the subrogation in its policy with the general contractor and upon the indemnification agreement between the general contractor and the subcontractor. While the court there was construing an agreement, and not a statute, we find that case persuasive of the issues of the present case. The Court states at page 586:
"The suit was against Ferguson but by reason of the insurance contract, General Accident stepped in and defended in place of Ferguson and assumed the responsibility for any judgment or settlement within the limits of the policy. If there had been no insurance, Ferguson would have been required to pay the settlement and the costs and attorney fees. By the subrogation agreement General Accident came into possession of all the rights of Ferguson, which included the right to recover costs and attorney's fees as well as the amount of the settlement. It may well be argued that Smith and Oby was not liable for the settlement because it was not paid by Ferguson.

*691 The indemnity agreement provides for the payment of expenses and it seems obvious that liability on the agreement carries with it costs and attorney fees as well as the amount of the settlement, * * *."
It does not appear to this court to be a worthy interpretation of the acts of the legislative body of this State to hold that whether an employee of a school district has or has not individual liability insurance should determine whether or not the individual is indemnified and granted the protection of the statute. Thus, where the statute specifically indemnified "including defense thereof" the company who defended pursuant to contract with the teacher should be entitled to recover. If we were to otherwise hold, we would find ourselves in the position of holding that it would indeed take two wrongs to make a right. For there can be no disagreement that had not only St. Paul but also Mann refused to defend Bridewell and he then was forced, in spite of two valid indemnification contracts, to seek and be liable for his own defense Bridewell would have had a cause of action against both St. Paul and Mann. For these reasons the defendant's first contentions must fail.
 7 The second basis that the appellee urges in seeking affirmance is that Mann defended for Bridewell under its Insurance Agreement II (set forth above) and thus Mann became primarily liable since II is an independent provision which is broader in scope than its Insuring Agreement I (set forth above). St. Paul contends further that to be entitled to indemnity, an actual legal liability must have been sustained and that subrogation does not exist in favor of one who pays a debt for which he is primarily liable. The appellee's argument's thrust is missed because the company with the primary liability for the defense and the costs therein is the appellee. Mann can but be considered as secondarily liable because it would have no duty to defend unless St. Paul failed to defend (or if the claim exceeded the policy limits of St. Paul).
The Court in the General Accident Case, supra, noted on page 586: "It is argued on behalf of the appellee that since Ferguson, the indemnitee, did not pay them, General Accident has no right to recover". Our statements above and the reasons therein apply with equal appropriateness to the appellee's second contention.
 8 For the appellee's final argument in support of an affirmance, it states that in an action by and between two insurance companies to determine which shall be held liable, the company held not to be liable shall not be allowed to recover fees from the company held to be primarily liable. It cites as authority for this contention Farmers Automobile Insurance Ass'n. v. Iowa Mutual Insurance Company, 77 Ill. App.2d 172, 221 N.E.2d 795. We believe that case should be distinguished factually from the case at hand. That case involves a declaratory judgment action *692 by and between two insurance companies to determine the rights, duties and obligations of the parties thereto. The insured were not parties to the action and suffered no exposure to loss. This is not the present case wherein an insured was sued and faced the distinct possibilities of not only direct loss from a third party plaintiff's verdict but also the certain expense of attorney fees and costs had Mann not performed as contracted.
We have considered the appellee's assertions, in particular the North Carolina case, Fireman's Fund Insurance Company and the Insurance Company of the State of Pennsylvania v. North Carolina Farm Bureau Mutual Insurance Company, 269 N.C. 358, 152 S.E.2d 513. We do not agree with the Supreme Court of North Carolina and are, of course, not bound by its holdings. We think the words of the Supreme Court of Illinois as stated in Geneva Construction Co. v. Martin Transfer and Storage Co., 4 Ill.2d 273, 122 N.E.2d 540, are applicable:
"* * * It is apparent that the issue is one of first impression in this jurisdiction and must be determined in terms of the essential elements of the doctrine of subrogation. This legal concept originated in equity, but is presently an integral part of common law, and is designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay. Under this doctrine, a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another, will be subrogated to the rights of the injured person against such wrongdoings. 83 C.J.S., Subrogation, § 16, page 616; Smith v. Clavey Ravinia Nurseries, Inc., 329 Ill. App. 548, 69 N.E.2d 921; Bennett v. Preferred Accident Insurance Co. of New York, 10 Cir., 192 F.2d 748, 751; Vance, Ins., 672-680; 71 C.J. 1548.
The Illinois Courts have recognized the broad purview of this doctrine. Cherry v. Aetna Casualty & Surety Co., 372 Ill. 534, 25 N.E.2d 11; Smith v. Clavey Ravinia Nurseries, Inc., 329 Ill. App. 548, 69 N.E.2d 921."
 9 It has long been recognized in Illinois that the doctrine of subrogation is not limited to contracts, it is broad enough to provide an equitable remedy. See Mobile Constr. Co. v. Phoenix Ins. Co., 119 Ill. App.2d 329, 256 N.E.2d 149.
For the reasons herein contained this cause is reversed and remanded to the circuit court for further proceedings not inconsistent with this opinion.
Reversed and remanded.
MORAN and CREBS, JJ., concur.